IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No. 07-cv-01817-WDM-CBS

JIN HEE PARK KIM,

    Plaintiff,

v.

ALBERTO GONZALES, U.S. Attorney General,
EMILIO T. GONZALES, Director of the U.S. Citizenship and Immigration Services,
ROBERT MATHER, Director of USCIS, Denver District Office,
MICHAEL CHERTOFF, Secretary, Department of Homeland Security,
ROBERT MUELLER III, Director, Federal Bureau of Investigation,
MICHAEL A. CANNON, FBI Records Management Division Section, and
ALL UNKNOWN GOVERNMENT AGENCIES INVOLVED IN SECURITY CHECKS,

    Defendants.

## ORDER ON MOTION TO DISMISS

Miller, J.

    Plaintiff Jin Hee Park Kim (Plaintiff) seeks a hearing on her naturalization application under Section 336(b) of the Immigration and Nationality Act, 8 U.S.C. § 1447(b). The matter before the court is Defendants' Motion to Dismiss Petition For Lack of Jurisdiction (doc no 18). Defendants contend that the United States Citizen and Immigration Services (USCIS) has adjudicated Plaintiff's petition for naturalization by denying it and, therefore, this matter is now moot. Plaintiff disagrees, arguing that once she filed this lawsuit, this court had exclusive jurisdiction to determine the matter and the USCIS's denial is without effect. The motion is fully briefed and I have determined that oral argument would not be of material assistance. For the reasons set forth below, I will grant Defendants' motion and dismiss this action.

Background

Plaintiff is a citizen of South Korea who was lawfully admitted for permanent residence on a conditional basis on May 11, 1996. Plaintiff was admitted as the spouse of a principal Employment Creation (EB-5) "immigrant investor." To qualify for this immigrant category, an individual must invest at least $1 million in a commercial enterprise (or $500,000 in a "targeted employment area"). 8 U.S.C. § 1153(b)(5). The investment must benefit the U.S. economy and create at least ten new jobs. *Id.* Plaintiff filed a Form I-829 to remove the condition on her lawful permanent resident status approximately ten years ago, but that application was still pending when Plaintiff filed her Application for Naturalization on August 10, 2006. Plaintiff was interviewed on April 2, 2007. Plaintiff filed her complaint in this lawsuit on August 29, 2007, after more than 120 days had lapsed since her interview. On or around October 24, 2007, Plaintiff's naturalization petition was denied. According to the denial letter, "the principal immigrant investor, through whom you derived your conditional resident status, did not make the required investment and/or create the required number of full-time jobs." Exhibit A-1 to Motion to Dismiss (doc no 18-2), p. 4. The letter goes on to say that "[b]ecause your resident status remains subject to conditions, you have not yet been accorded the privilege of residing permanently in the United States and are ineligible for naturalization." *Id.*

Naturalization Standards and Procedures

Under the applicable provisions of the Immigration and Nationality Act, "[n]o person ... shall be naturalized" unless he meets the following criteria: (1) the applicant must have been a lawful permanent resident residing within the United States for the five years preceding his application for naturalization; (2) the applicant must have resided

2

continuously within the United States from the date of the application up to the time of admission to citizenship; and (3) during all the relevant time periods, the applicant must be a person of good moral character. 8 U.S.C. § 1427(a). In addition, the applicant generally must demonstrate an understanding of the English language, including the ability to read, write, and speak words in ordinary usage, 8 U.S.C. § 1423(a)(1); knowledge and understanding of the fundamentals of United States history and of the principles and form of the United States government. 8 U.S.C. § 1423(a)(2). Each applicant must also pass a background check for national security reasons. See Pub.L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448, set forth in the historical and statutory notes to 8 U.S.C. § 1446. It is undisputed that Plaintiff has passed her background check.

There are several procedural requirements governing applications for citizenship. The applicant must first submit a completed Form N-400 Application for Naturalization to USCIS. *See* 8 C.F.R. § 334.2(a). After the application for naturalization is filed, USCIS "shall conduct an investigation of the applicant." 8 C.F.R. § 335.1. When the investigation is completed, each applicant shall appear in person before a USCIS officer for an examination. 8 C.F.R. § 335.2(a). "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under §335.2." 8 C.F.R. § 335.3(a).

## Discussion

Plaintiff asserts that the court acquired *exclusive* jurisdiction over her naturalization petition under 8 U.S.C. § 1447(b) after she initiated this lawsuit. Accordingly, she argues that the USCIS's denial of her petition is *ultra vires* and a nullity. She asserts that the case is not moot and that she is entitled to an order granting her petition for naturalization.

3

The relevant statute states:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section,[1] the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b) (footnote added).

The majority of district courts considering when the court's jurisdiction attaches have held that the interview date triggers the 120-day time period referenced in § 1447(b). *See, e.g.*, *Khelifa v. Chertoff*, 433 F. Supp. 2d 836, 840-42 (E.D. Mich. 2006); *El-Daour v. Chertoff*, 417 F. Supp. 2d 679, 681-83 (W.D. Pa. 2005); *Nguyen v. Gonzalez*, 2007 WL 713043 at *3 (S.D. Tex. 2007) (citing cases). I adopted this reasoning in *Mahd v. Chertoff et al.,* Case No. 06-cv-01023-WDM-PAC. See Order dated March 22, 2007. Accordingly, I have jurisdiction over this matter. Whether my jurisdiction is exclusive or concurrent with the USCIS, however, is a new issue and one that the Tenth Circuit has yet to address.

The primary case concluding that the filing of a complaint under section 1447 divests the USCIS of jurisdiction is *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004). Examining the statutory language, the court noted that two options are provided, to "determine the matter" or to "remand the matter" with instructions. 359 F.3d at 1160. The Ninth Circuit reasoned that a court could not really "determine" the matter if the USCIS could simply act first and "essentially force the court to accept its view." *Id.* Similarly, the

---

[1] 8 U.S.C. § 1446(d) provides that "[t]he employee designated to conduct [the] examination shall make a determination as to whether the application should be granted or denied, with reasons therefor."

court questioned, "Why would Congress need to provide for a 'remand' to the [USCIS] to 'determine the matter' if the [USCIS] retained jurisdiction 'to determine the matter' all along?" *Id.* Interpreting the word "remand" to be essentially the same as that used in appellate practice, i.e., a return of jurisdiction after appeal, the court determined that the intent of section 1447 was to remove jurisdiction from the USCIS and place it exclusively with the district court. *Id.* The Ninth Circuit also concluded that this interpretation was consistent with the statutory context, particularly since the district court has final administrative review of a USCIS denial pursuant to 8 U.S.C. § 1421(c) and would further the policy objective of reducing waiting time for naturalization applicants. *Id.* at 1162-63. Similar reasoning as *Hovsepian* has been adopted by several circuit courts of appeal and district courts. *See, e.g., Walji v. Gonzales*, 500 F.3d 432, 438 (5th Cir. 2007); *Etape v. Chertoff*, 497 F.3d 379, 383-87 (4th Cir. 2007); *Zaranska v. United States Dep't of Homeland Security,* 400 F. Supp. 2d 500, 502-3 (E.D.N.Y. 2005).

However, courts interpreting section 1447 as conferring concurrent jurisdiction have also pointed out valid concerns underlying their conclusion. For example, in *Perry v. Gonzales*, the court disagreed with *Hovsepian*, noting that the "clear purpose of the statute is to reduce unnecessary delay in resolution of citizenship disputes" 472 F. Supp. 2d 623, 628 (D.N.J. 2007). The *Perry* court concluded that concurrent jurisdiction would best achieve that goal, as the USCIS could continue its work while a case was pending, instead of ceasing until remand. *Id.* at 629. Moreover, in light of the extended time that litigation in federal court could take and the court's relative lack of familiarity with the naturalization process, resolution could take even longer in district court than if the agency continued its progress towards a decision. *Id.* The court noted that significant judicial resources would

be saved when a petition is granted during the pendency of the lawsuit, and even in some circumstances where the petition is denied. *Id.* I share this concern about the effect of deeming null and void any petitions granted during the pendency of a section 1447 lawsuit. This creates particular difficulties where, as in *Etape*, the court concludes that its decision is retroactive. 497 F.3d at 387-88. Finally, both *Perry* and *Hovsepian* raise the issue of how the jurisdiction ruling will affect the incentive of the USCIS to act within the 120 day time period. The Ninth Circuit in *Hovsepian* was concerned that concurrent jurisdiction would lead to rushed decisions to preclude the district court's ruling on the application. 359 F.3d at 1164. The court in *Perry* notes, however, that given Congress's preference for decisionmaking by the policy experts, i.e., the administrative agency, the court should encourage the USCIS to render decisions on naturalization applications and that, absent clear facts, concerns about rushed decisions were essentially speculative. 472 F. Supp. 2d at 630.

The reasoning of *Perry* is more persuasive, particularly in light of the United States Supreme Court's general policy concerning stripping agencies of jurisdiction as noted in *Brock v. Pierce County*, 476 U.S. 253, 260 (1983) ("We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When . . . there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act."). Although this case involves private, rather than public, rights, I would conclude that the same approach should apply. *See Gallagher v. Nat'l Transp. Safety Board*, 953 F.2d 1214 (10th Cir. 1992) ("even when significant private interests are threatened by the government's

failure to comply with statutorily prescribed time requirements, the [United States Supreme] Court has refused to conclude that the government loses its authority to ultimately perform its function.") (citing *United States v. Montalvo-Murillo*, 495 U.S. 711 (1990)). I do not agree with the *Hovsepian* court that the statutory language mandates an interpretation of exclusive jurisdiction because otherwise the terms "remand" or "determine" would be surplusage. Similarly, I disagree that the mere fact that Congress specifies as a consequence of delay that the court acquires jurisdiction means that the agency is necessarily deprived of it.

Reading section 1447 to give the district court concurrent jurisdiction with the USCIS is the "less drastic" alternative to jurisdiction stripping. It is also reasonable and consistent with language and the purpose of the statute to conclude that the district court does not lose its power to "determine" or "remand" simply because the USCIS adjudicates the petition after a section 1447 complaint is filed; perhaps the consequence intended by Congress was that the court could immediately review an unfavorable decision, rather than requiring the applicant to encounter further delays by filing an administrative appeal and then seeking ultimate relief from the district court under 8 U.S.C. § 1421(c).[2]

Nonetheless, I need not resolve this thorny issue in order to grant Defendants' motion, as in either case I would decline to determine the matter on the merits. If the court has concurrent jurisdiction, I would dismiss the matter as moot or not meriting review at this

---

[2] "A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer . . . may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo . . ." I note that Plaintiff expressly disclaims any intent to have me review the USCIS decision, but rather seeks a *de novo* initial determination. Response to Motion to Dismiss at 17.

7

time, directing Plaintiff to pursue her administrative appeal remedies. In the alternative, if I determined that I had exclusive jurisdiction and the USCIS's decision was without effect, I would nonetheless remand this matter to the USCIS for entry of its denial decision and the beginning of administrative appeal proceedings. Plaintiff argues extensively that the denial of her naturalization petition was in error because conditional permanent residents are eligible for naturalization. However, Plaintiff does not dispute the other reason for denial provided in the letter, specifically that the principal immigrant investor did not make the required investment and/or create the required number of full-time jobs. In light of the USCIS's administrative expertise with such matters, I conclude that it would be preferable to permit the agency to first consider Plaintiff's objections to this finding and its legal implications. In the event that Plaintiff's administrative appeal is denied and she seeks review by the district court pursuant to section 1421(c), the court will have the benefit of a fully developed administrative record and will be in a better position to determine Plaintiff's naturalization petition. Therefore, regardless of whether I have exclusive or concurrent jurisdiction, I see no grounds at this time to disturb the USCIS's initial determination.

Accordingly, it is ordered:

1. Defendants' Motion to Dismiss Petition For Lack of Jurisdiction (doc no 18) is granted. This case shall be dismissed and the matter remanded to the USCIS for continued administrative processing. Plaintiff's administrative appeal rights shall be

not be jeopardized by any failure to timely file appeal documents during the pendency of this lawsuit.

DATED at Denver, Colorado, on May 5, 2008.

BY THE COURT:

*s/ Walker D. Miller*

United States District Judge